NB:AXB
F. #2020R00366

FILED
CLERK

12:44 pm, Apr 24, 2020

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

AMARDEEP SINGH, also known as
"Bobby Singh" and "Bobby Sidana,"

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

C O M P L A I N T

(50 U.S.C. §§ 4512 and 4513)

20-MJ-326 (SIL)

EASTERN DISTRICT OF NEW YORK, SS:

JOSEPH MARCUS, being duly sworn, deposes and states that he is a Postal Inspector with the United States Postal Inspection Service, duly appointed according to law and acting as such.

On or about and between March 25, 2020 and April 14, 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant AMARDEEP SINGH, also known as "Bobby Singh" and "Bobby Sidana," did knowingly and intentionally accumulate (i) in excess of the reasonable demands of business, personal, and home consumption, and (ii) for the purpose of resale at prices in excess of prevailing market prices, materials which had been designated by the President of the United States as scarce materials and materials the supply of which would be threatened by such accumulation, in violation of the Defense Production Act of 1950.

(Title 50, United States Code, Sections 4512 and 4513)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I am a Postal Inspector with the United States Postal Inspection Service ("USPIS") and have been since January 2013. As such, I am responsible for conducting and assisting in investigations into the activities of individuals and criminal groups suspected of adversely affecting or fraudulently using the United States mail and postal system. I am familiar with the facts and circumstances set forth below from my participation in this investigation; my review of the investigative file, including the defendant's criminal history record; and from reports of other law enforcement officers involved in the investigation.

## I. The COVID-19 Outbreak and the Defense Production Act

2. In December 2019, a novel coronavirus, SARS-CoV-2 (the "coronavirus"), was first detected in Wuhan, Hubei Province of the People's Republic of China ("PRC"), causing outbreaks of the coronavirus disease COVID-19 that have since spread globally. On January 31, 2020, the Secretary of Health and Human Services ("HHS") declared a national public health emergency under 42 U.S.C. § 247d as a result of the spread of COVID-19 to and within the United States. On March 11, 2020, the Director-General of the World Health Organization ("WHO") characterized COVID-19 as a pandemic. On March 13, 2020, the President of the United States issued Proclamation 9994 declaring a national emergency beginning on March 1, 2020, as a result of the rapid spread of COVID-19 within the United States.

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

3. According to the Centers for Disease Control and Prevention ("CDC"):

> Early reports suggest person-to-person transmission most commonly happens during close exposure to a person infected with COVID-19, primarily via respiratory droplets produced when the infected person coughs or sneezes. Droplets can land in the mouths, noses, or eyes of people who are nearby or possibly be inhaled into the lungs of those within close proximity.[2]

Accordingly, CDC has issued guidance to health care providers recommending that they wear personal protective equipment ("PPE") to prevent the coronavirus from being transmitted by infected patients to healthcare providers.

4. As COVID-19 spreads in the New York Metropolitan area and across the United States, it threatens to overwhelm hospitals and healthcare providers who are required to care for rapidly increasing numbers of seriously ill patients with a rapidly dwindling stock of PPE and other necessary health and medical resources. Accordingly, on March 18, 2020, the President of the United States issued Executive Order 13909, see 85 Fed. Reg. 16,227, invoking the powers vested in the President by the Defense Production Act of 1950, 50 U.S.C. §§ 4501 et seq. (the "Act").

5. The Act authorizes the President to, among other things, "allocate materials, services, and facilities in such manner, upon such conditions, and to such extent as he shall deem necessary or appropriate to promote the national defense." 50 U.S.C. § 4511(a)(2). The President may exercise this authority "to control the general distribution of any material in the civilian market" if the President finds "(1) that such material is a scarce

---

[2] See CDC, "Interim Infection Prevention and Control Recommendations for Patients with Suspected or Confirmed Coronavirus Disease 2019 (COVID-19) in Healthcare Settings," https://www.cdc.gov/coronavirus/2019-ncov/infection-control/control-recommendations.html (last visited Mar. 24, 2020).

and critical material essential to the national defense, and (2) that the requirements of the national defense for such material cannot otherwise be met without creating a significant dislocation of the normal distribution of such material in the civilian market to such a degree as to create appreciable hardship."   50 U.S.C. § 4511(b).

6. "In order to prevent hoarding," the Act further provides that "no person shall accumulate (1) in excess of the reasonable demands of business, personal, or home consumption, or (2) for the purpose of resale at prices in excess of prevailing market prices, materials which have been designated by the President as scarce materials or materials the supply of which would be threatened by such accumulation."   50 U.S.C. § 4512.   The Act requires the President to publish in the Federal Register "every designation of materials the accumulation of which is unlawful and any withdrawal of such designation," and authorizes the President to "prescribe such conditions with respect to the accumulation of materials in excess of the reasonable demands of business, personal, or home consumption as he deems necessary to carry out the objectives of this chapter."   Id.

7. In Executive Order 13909, the President found "that health and medical resources needed to respond to the spread of COVID–19, including personal protective equipment and ventilators, meet the criteria specified in section 101(b) of the Act (50 U.S.C. 4511(b))."   The President further delegated authority to the Secretary of HHS to "identify additional specific health and medical resources that meet the criteria of section 101(b)."

8. On March 23, 2020, the President issued Executive Order 13910, see 85 Fed. Reg. 17,001, declaring that:

> To ensure that our Nation's healthcare systems are able to surge capacity and capability to respond to the spread of COVID-19, it is the policy of the United States that health and medical

resources needed to respond to the spread of COVID-19, such as personal protective equipment and sanitizing and disinfecting products, are not hoarded.

Accordingly, the President delegated to the Secretary of HHS the President's authority under 50 U.S.C. § 4512 "to prevent hoarding of health and medical resources necessary to respond to the spread of COVID-19 within the United States," and "to implement any restrictions on hoarding."

9. On March 25, 2020, the Secretary of HHS exercised the authority delegated to the Secretary of HHS by the President to prevent the hoarding of health and medical resources necessary to respond to the spread of COVID-19 within the United States. The Secretary of HHS published a notice, see 85 Fed. Reg. 17592, designating the following health and medical resources under the Act as scarce materials or materials the supply of which would be threatened by accumulation in excess of reasonable demands of business, personal, or home consumption, or for the purpose of resale at prices in excess of prevailing market prices:

   a. N-95 Filtering Facepiece Respirators
   b. Other Filtering Facepiece Respirators (e.g., those designated as N99, N100, R95, R99, R100, or P95, P99, P100)
   c. Elastomeric, air-purifying respirators and appropriate particulate filters/cartridges
   d. Powered Air Purifying Respirator (PAPR)
   e. Portable Ventilators
   f. Chloroquine phosphate or hydroxychloroquine HCl
   g. Sterilization services for certain medical devices and certain sterilizers
   h. Disinfecting devices and other sanitizing and disinfecting products suitable for use in a clinical setting
   i. Medical gowns or apparel, e.g., surgical gowns or isolation gowns
   j. Personal protective equipment (PPE) coveralls, e.g., Tyvek Suits
   k. PPE face masks
   l. PPE surgical masks
   m. PPE face shields
   n. PPE gloves or surgical gloves

      o. Ventilators, anesthesia gas machines modified for use as ventilators, and positive pressure breathing devices modified for use as ventilators, ventilator tubing connectors, and ventilator accessories

10. The Defense Production Act makes the willful performance of any act prohibited by § 4512, "or any rule, regulation or order thereunder," a crime punishable by a fine of not more than $10,000 or imprisonment for not more than one year.  50 U.S.C. § 4513.  Accordingly, willfully accumulating designated scarce or threatened materials either (1) in excess of the reasonable demands of business, personal, or home consumption, or (2) for the purpose of resale at prices in excess of prevailing market prices, is a criminal offense.

## II.  The Defendant's "COVID-19 Essentials" Business

11. The defendant AMARDEEP SINGH, also known as "Bobby Singh" and "Bobby Sidana" ("SINGH"), owns and operates a network of entities that are variously known as "NY Tent Sale," "HottestFootwear.com d/b/a Warehouse Liquidation Center," "WLC," "WLC Mart" and "S&S Sports, Inc." (collectively, the "Singh Entities").  Prior to March 2020, the Singh Entities exclusively engaged in the business of selling sneakers, clothing and other apparel, both online and from a commercial location at 1538 Old Country Road, Plainview, New York (the "Retail Premises").  In connection with this business, the Singh Entities also utilized off-site warehouse space located at 355 Crooked Hill Road, Brentwood, New York (the "Warehouse Premises").

12. In or about mid-March 2020, SINGH dedicated a portion of the Retail Premises to so-called "COVID-19 Essentials," where, among other things, SINGH sold items to the public that had been designated as scarce and threatened materials, including, but not limited to, N-95 filtering facepiece respirators, PPE face masks, PPE surgical masks, PPE

face shields, PPE gloves, PPE coveralls, medical gowns and clinical-grade sanitizing and disinfecting products.

13. On March 18, 2020, shortly after SINGH introduced this product line, the Nassau County Department of Consumer Affairs ("NCDCA") issued a citation to "HottestFootwear.com d/b/a Warehouse Liquidation Center," a known Singh Entity, for allegedly unconscionable trade practices arising from the sale of N-95 respirator face masks at the Retail Premises, namely, repackaging individual N-95 masks in Ziploc bags and selling them to consumers, in violation of New York's consumer protection laws. Thereafter, between March 19 and March 31, 2020, the NCDCA issued six more citations to "HottestFootwear.com d/b/a Warehouse Liquidation Center," all for allegedly unconscionable trade practices at the Retail Premises, including, but not limited to: (i) selling N-95 respirator face masks without proper labeling and user instructions; (ii) selling outdated models of N-95 respirator face masks whose approval had been rescinded by the CDC; and (iii) selling PPE face shields without proper labeling and user instructions.

14. On April 1, 2020, the Office of the New York State Attorney General sent a cease-and-desist letter to "WLC," a known Singh Entity, based on information suggesting that WLC may be violating New York's price-gouging statute, N.Y. Gen. Bus. L. § 396-r. Specifically, the Attorney General indicated that State authorities had become aware that WLC was advertising and offering certain necessary consumer goods, including hand sanitizers and other disinfecting products, at "unconscionably excessive prices during a period of market disruption caused by the outbreak" of COVID-19. SINGH received a copy of this letter at the Retail Premises.

**A. The Defendant's Unlawful Accumulation of Scarce and Threatened Materials**

15.     Notwithstanding these cautionary measures by New York State authorities, between March 25, 2020 and April 14, 2020, SINGH accumulated PPE and other health and medical resources—some of which had been designated as scarce and threatened materials by the Secretary of HHS—in quantities that far exceeded the reasonable demands of SINGH's retail business, which, until that point in time, had not dealt in such products.

16.     For example, in the approximately two weeks between March 25, 2020 and April 8, 2020, SINGH, by and through one or more of the Singh Entities, received or attempted to receive the following deliveries at the Retail Premises and/or the Warehouse Premises: (i) 40 shipments of disposable face masks, weighing more than 1.6 tons; (ii) 14 shipments of disposable surgical gowns, weighing more than 2.2 tons; (iii) six shipments of hand sanitizer, weighing more than 1.8 tons; and (iv) seven shipments of digital thermometers, weighing approximately 253 pounds.

17.     These and other items were advertised for sale at the Retail Premises. Specifically, as depicted below, in addition to the items described above, the Retail Premises offered for sale PPE face shields and PPE coveralls, i.e., full-body isolation suits, both of which had been designated as scarce and threatened materials by the Secretary of HHS:





18. During this time period, SINGH also marketed such items using social media, including two Instagram accounts with the handles @nytentsale and @wlcmart (the "Singh IG Accounts"). On April 7, 2020, the Singh IG Accounts published the following image of SINGH wearing a PPE face shield, with a disposable face mask around his neck, and posing behind numerous bottles of hand sanitizer and stacked canisters of disinfectant wipes; a public comment by the @nytentsale account read, "Face Shields in stock now":



19. On or about April 14, 2020, Postal Inspectors executing a judicially-authorized search warrant at the Retail Premises recovered quantities of PPE and other health and medical resources—some of which had, for weeks, been designated as scarce and threatened materials—far exceeding the reasonable demands of SINGH's sneaker and apparel business. Specifically, a search of the Retail Premises and the Warehouse Premises revealed, among other things:

    a. 21,267 KN-95 respirator face masks[3];
    b. 75,500 surgical masks;
    c. 8,039 two- and three-ply face masks;
    d. 5,241 face shields;
    e. 2,471 full-body isolation suits;
    f. 176,104 disposable latex gloves;
    g. 711,400 disposable vinyl gloves;
    h. 8,200 disposable nitrile gloves; and
    i. 147 digital thermometers.

### B. The Defendant's Price-Gouging of Scarce and Threatened Materials

20. Between March 25, 2020 and April 14, 2020, SINGH resold the PPE and other health and medical resources he had accumulated—some of which had been designated as scarce and threatened materials by the Secretary of HHS—at prices in excess of prevailing market prices. For example, records obtained during a judicially-authorized search of the Retail Premises reflect that:

---

[3] "KN-95" is a filtering facepiece respirator designation that is assigned by the PRC. In sum and substance, a KN-95 respirator is similar to an N-95 respirator in form and function, but evaluated based upon its compliance with PRC requirements. Prior to the COVID-19 pandemic, KN-95 respirators were not authorized for importation into or sale within the United States. As a result of the pandemic, however, some varieties of KN-95 respirators have been approved for importation. Even those that have not been approved for importation qualify as either a filtering facepiece respirator and/or "PPE facemask" under the terms of 85 Fed. Reg. 17592.

    a.      SINGH obtained N-95 respirator face masks for a per-unit cost of $2.50. At the Retail Premises, SINGH resold these masks for a per-unit price of between $3.99 and $4.99—a markup of approximately 59% to 99%

    b.      SINGH obtained "Dr. Mfyan" brand KN-95 respirator face masks for a per-unit cost of $2.60. At the Retail Premises, SINGH resold these masks for a per-unit price of $6.99—a markup of approximately 168%

    c.      SINGH obtained generic KN-95 respirator face masks for a per-unit cost of $1.75. At the Retail Premises, SINGH resold these masks for a per-unit price of $4.99—a markup of approximately 185%

    d.      SINGH obtained three-ply disposable face masks for a per-unit cost of $0.07. At the Retail Premises, SINGH resold these masks for a per-unit price of $1.00—a markup of approximately 1,328%

    e.      SINGH obtained non-medical fashion masks for a per-unit cost of $7.50. At the Retail Premises, SINGH resold these masks for a per-unit price of $18.00—a markup of approximately 125%

    f.      SINGH obtained PPE face shields for a per-unit cost of $3.10. At the Retail Premises, SINGH resold these face shields for a per-unit price of $9.99—a markup of approximately 222%

    g.      SINGH obtained 100-count boxes of disposable vinyl gloves for a cost of between $2.50 and $3.99 per box. At the Retail Premises, SINGH resold these gloves for $7.99 per box—a markup of approximately 100% to 219%

  h. SINGH obtained digital thermometers for a per-unit cost of $35.50. At the Retail Premises, SINGH resold these devices for a per-unit price of $79.99—a markup of approximately 125%

  i. SINGH obtained 32-ounce bottles of "Perfect Purity" brand hand sanitizer for a per-unit cost of $8.50. At the Retail Premises, SINGH resold this product for a per-unit price of $24.99—a markup of approximately 194%

  j. SINGH obtained 16-ounce bottles of "Sanizide" brand hand sanitizer for a per-unit cost of $8.00. At the Retail Premises, SINGH advertised this product as "Hospital Grade" and resold 16-ounce bottles for $14.99 each—a markup of approximately 87%

  21. Moreover, in addition to consumer sales at the Retail Premises, SINGH conducted wholesale transactions utilizing the inflated prices listed above, sometimes to uniquely vulnerable populations. For example, records obtained during a judicially-authorized search of the Retail Premises reflect that:

  a. On or about March 24, 2020, SINGH completed a sale of 25 16-ounce bottles of "Sanizide" brand hand sanitizer at a per-unit price of $14.99 (87% above cost) to the Association to Benefit Children.

  b. On or about April 1, 2020, SINGH completed a sale of 500 KN-95 respirator face masks at a per-unit price of $4.99 (185% above cost) and ten boxes of disposable vinyl gloves at a price of $7.99 per box (100% to 219% above cost) to the New York Foundation for Senior Citizens, Inc.

  c. On or about April 2, 2020, SINGH completed a sale of 2,000 three-ply disposable face masks at a per-unit price of $1.00 (1,328% above cost) and ten

digital thermometers at a per-unit cost of $79.99 (125% above cost) to the New York Foundation for Senior Citizens, Inc.

    d.    On or about April 3, 2020, SINGH completed a sale of, among other items, 100 KN-95 respirator face masks at a per-unit cost of $4.99 (185% above cost); 4,000 three-ply disposable face masks at a per-unit price of $1.00 (1,328% above cost); ten boxes of disposable gloves at a price of $7.99 per-box (100% to 219% above cost); a 32-ounce bottle of "Perfect Purity" brand hand sanitizer for $24.99 (194% above cost); and four fashion masks at a per-unit price of $18 (125% above cost) to Rewarding Environments for Adult Living, Inc.

WHEREFORE, your deponent respectfully requests that the defendant AMARDEEP SINGH, also known as "Bobby Singh" and "Bobby Sidana," be dealt with according to law.

_____
JOSEPH MARCUS
Postal Inspector
United States Postal Inspection Service

Sworn to before me this
24th day of April, 2020

_____
THE HONORABLE STEVEN I. LOCKE
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK